I'm sorry to see that we've lost most of our audience. Case number 13-5039, Teton Historic Aviation Foundation and Teton Adjet LLC doing business as Teton Aviation Center appellants v. United States Department of Defense, et al. Mr. Garden for the appellants, Mr. Mayer for the appellees. Good morning. May it please the Court. I have reserved five minutes of time for my rebuttal. You saw how that worked the last time. Yes, for what it might be worth. I'm here this morning on behalf of Appellants Teton Historic Aviation Foundation and Teton Aviation Center. In your honors, the district court below erred by effectively imposing too high a standard on plaintiff for purposes of it having to show that it was likely, under the Article III test for standing, that an order from the court would redress the harm that plaintiff had suffered. And in making this error, the district court failed to recognize and give appropriate weight to three key facts. The first fact, which is relevant not just to the specific sale issue, but also to the opportunity for future sales, is that the sole reason these parts were not released for sale and won't ever be released in the future was the government's improper classification of the parts. And as noted in this Court's decision in Dinant Atlantic, which we cite in our briefs, and under simple logic, removing the problem will often result in relief, which in this case means that there will be an opportunity for this sale and other sales to go forward in the future. Well, to be precise, removing the obstacle will require the government to redo the decision-making process. And your contention is we know of nothing other than the challenged orders that stands in the way of going ahead with sales of K-4 parts. Yes, Your Honor. Is that correct? Exactly. I mean, we've got two points there. Number one is that we have, in this case, a track record. Unlike most standing cases, we know exactly what would happen if this order was not in place. It's what happened before the order or the decision was made. The parts were put up for sale and they were available to clients left behind. So that's very, very relevant to assessing the likelihood of what would happen if that decision was changed. We have a track record. And the other point, Your Honor, that I want to make clear on is that since this decision came down in 2000 Listen, can I get back on you? You have a track record, but you're saying that from that track record we can confidently predict that the government, if the reclassification scheme were redone and done lawfully, according to your view, that we know that the government would put these up for sale again? We don't know that with certainty, Your Honor, but luckily that's not the test. The test is sufficient likelihood. And I believe that the track record does give the court the confidence that there's a sufficient likelihood that if the only thing that stopped this sale from going forward is removed, the sales like this will go forward. And I want to point out to Your Honor, in addition to that, even though this happened in late 2008, early 2009, since then the government has pointed to nothing that has come up that has changed that. They, at one point, talk about hundreds of policies. Now, the parts you want are gone, right? I mean, the planes were shredded, right? But there are other planes, these ones that are held in escrow. Yes, Your Honor. And you're saying it's likely that the government will put those on the market. Yes, Your Honor. In fact, those specific planes are exactly the same kind that we were purchasing. Those planes, the government has already sent those over. So why do you think it's likely that the government will do that? I mean, isn't that totally within their discretion? Aren't there lots of reasons? I mean, isn't it more reasonable to think that they made a decision about the five that were eventually shredded, but why do we think they'd make the same decision about those that are in escrow? That's not the right phrase, but the ones that are in escrow. Yeah. We think it's likely because, number one, with these planes that are held under the injunction and other planes like them, the government has already determined that it has no use for those. That's why it turned them over. It has no use for these planes. And the law makes clear that, and this is in 18 U.S.C. section 641, you can't destroy a piece of government property that has value. Obviously, these parts have value. My client's bidding on them. Please, these have value. So they can't be destroyed. I think you're getting into the merits now. I am. Which under ordinary standing law are assumed in your favor. Understood, Your Honor. But I was simply addressing the point of the likelihood of whether or not this would occur or not. And I think what we've got going for us is when you go back to if this decision were changed and the parts were no longer deemed to be hazardous and did not have to be destroyed, they'd be put up for sale because, number one, the government's already decided, with the aircraft under the injunction, it has no use for them. It's turned them over for disposal. Wait, can you just go back? What was the section of 18 U.S.C. you said? 18 U.S.C. under section 641. So that's the crime of unlawfully destroying government property. Understood, Your Honor. You're not saying that if the Air Force decided it wanted to destroy an airplane that it would be committing a crime? It would, Your Honor, if the airplane was not hazardous, could be released. The statute doesn't say anything about that. I mean, you're saying that the Air Force or the Commander-in-Chief can violate the criminal law by arbitrarily and capriciously deciding that it no longer has a need for a plane and it doesn't want it to be sold? I have to say it is true that we have to accept that your merits arguments, when they're colorable, this one is not colorable. So I would move on to another one. Okay. What I can do, Your Honor, is I can point to the policy, and the policy of the agency of the DOD in this regard is set out in Joint Appendix 459 in a GAO report. They noted that it's the government's policy that the government is authorized to dispose of excess property and encourages the reuse of excess property to the maximum extent possible. So, Your Honor, even if you don't believe that that criminal law applies here, that GAO report at Joint Appendix 459 talks about the fact that the policy is whenever possible to reuse these parts. So therefore, if the parts are deemed not hazardous and they can be used by the private sector, such as my client, for purposes of flying in military air shows, the government policy is to make those parts available to those folks. So we do think, going back to Your Honor's original question, there is a substantial likelihood, even though the test I believe is even lower than that, but there's a substantial likelihood, given all the facts in this case, that if the one action that stopped the sale from proceeding is removed, that sales like this will continue on. Which actions are you challenging? Is it the coding of these specific parts as, I'm going to call them B and Q, just for my, because it's just too complicated for me to remember everything. Or are you challenging the idea that B and Q parts shouldn't be released at all? In other words, there's a policy in which they announced we're not going to release any B and Q parts. Are you challenging that policy or are you challenging the policy by which, or the implementation by which they actually decided that these particular parts were B and Q? It's actually because of the way it works, Your Honor. It's my understanding that it's both because the problem we've got is that they decided that these parts essentially fit under those categories were hazardous. As we've shown from, again, it goes to the merits, but what we would be able to show is that they're not hazardous. So the parts were improperly coded as hazardous and therefore requiring. So you're not challenging the policy. You're challenging the coding of particular parts. Correct, Your Honor. The policy was more generic than that. The policy was a reaction to some bad press. But you would agree if they were properly coded that you would not have an argument here. Absolutely, Your Honor, because that was a situation when we actually bid on the sale. So here's my question. So you would, if we got to the merits, be asking the court to decide whether the government's national security determination about this property was correct or incorrect, right? Arbitrary or not, yes, Your Honor. Yes. And we have a long list of cases in which we've said that the agency's national security and foreign policy determinations are unreviewable by the court. For example, in District No. 1 Pacific Coast District versus the Maritime Association, we so held with respect to what should be done with respect to ships, eight vessels that the administration had determined certain things should be done with because they were required for national security. And we said that this is a matter that was not subject to review. And, Your Honor, in this case, though, we have a situation where the control of these parks has been delegated by Congress to GSA, right? And so the fact is that this decision was being controlled by GSA and was delegated on down. But the other fact that we just say that there's a GSA regulation that defers to the military on these questions. But it delegates down, yes, Your Honor. That's right. So you would be asking us to say that the military was incorrect in its determination of whether these parks would release of the parks would be injurious to the national security. Yes. Yes, Your Honor. Because the key point, though, Your Honor, that I think makes this case different than the cases Your Honor pointed to is that this very first of all, this aircraft is a trainer aircraft. And the FAA, the federal agency, has certified 13 of these exact same type of aircraft for ownership by private parties and flight in the United States. We think it's patently clear that having these aircraft owned by private parties is not injurious in any way to the national security. It's just not. And a federal agency's own decisions have shown that to be very, very clear. So we don't think now that issue specifically did not come up in the district court proceeding. Right. I take it the government's position is that they never have authorized the sale of these other planes. These must have come by purchases from other countries or something else, right? Correct. Their position is they did not authorize the sale, but they've authorized the flight. The FAA has certified those aircraft for flight right now. Isn't that a different question than whether the parks should be sold? I don't think so, Your Honor. I think that if a federal agency has decided that these aircraft can be owned by private parties and flown in airspace around right where we are today outside the restricted airspace, of course, that that shows that the federal government does not view that it's dangerous to our national security for these kinds of aircraft to be in private hands. That just runs directly counter to that kind of conclusion. The particular plane that you have, your organization has, where did that come from? The plane we've got, I believe that we purchased that from an individual in another country. I see. But that purchase was authorized, obviously. It was allowed to be imported into the United States. So the United States government has no problem with private parties buying or flying these kinds of aircrafts. And, Your Honor, I know we're getting into the merits. I don't want to do that. But because the Court raised, I think it's important to point out that if you go back in the record, this policy clearly was, and I think the government acknowledges this in their brief, it was a reaction to some bad press they got because some parts from F-4 aircraft, which are definitely hazardous aircraft, got into the wrong hands. And the government policy was to simply require all kinds of aircraft parts to be destroyed. So I realize we're sneaking back into the merits. I don't want to do that. But since the Court raised the issue of whether or not this involves national security, I think we can show very clearly to the district court, and again, it was not raised specifically in the government's motions that I recall, but we can show that this is not a matter of national security. We all recognize that you should defer in the right situation, but that doesn't mean total deference. When you have a situation like this where you have the federal government authorizing these kinds of aircraft, these same kinds of aircraft to be owned and flown by private parties, the decision at issue here that you can't sell parts from those aircraft, the non-hazardous parts, to private parties is somehow dangerous to national security. Counsel, I think I'd cut you off in the opening of your argument because I think you started by saying there were three propositions that were established standing. And you got out one, which I think I understand. Okay. And what are the second and third? The other two, Your Honor, is that the second point is that unlike the cases that have been cited by the Court, there's no truly independent third party here. And this refers to government liquidation as the government contractor in this case. Well, but regardless of that, I mean, if GL died tomorrow or yesterday, and the government wants to sell them, we'll be able to sell them. Yes, Your Honor. Right. So we don't have to worry about that. Thank you. Okay. And then the third? And the third record we kind of touched on is that when you're talking about the overall test, you're being the likelihood of relief, what's very important in this case, which is different than I believe any of the cases that either party have cited, is the track record. We know what happened to it. Wasn't that the first point? Well, no, my first point, Your Honor, was that the sole reason that the sale was blocked was the government action. My second point was there's no independent party. This is a question of whether we're looking at the donut or the whole. Right. But we have touched on all three points. The whole, the whole is the sole reason, and the donut is the context. Yes, Your Honor. So thank you for that opportunity. But I have touched on my three points in making those points. Are there further questions? Why don't you reserve your time. Thank you, Your Honor.  May it please the Court. My name is Peter Amir, Counsel of the United States Government here at the Department of Defense. The District Court held low that where an injury is attributable to a loss of a contract and a party challenges a government action because it prevented the plaintiff from reaping the benefits of that contract, the plaintiff can't show standing unless there is a valid contract and a suit to enforce that contract against the adverse party. I thought that related to the first part of the Court's explanation. And the second part addressed a great new world where we were not interested in the past contract or, for that matter, interested in GL. That's right. But, Judge Williams, that's clearly the exception to the general doctrine that you have to show standing with respect to the injury that you allege in your complaint. That is the... Well, that's, there is no exception to the doctrine. You do have to show standing. But the injury is not getting the parts, right? The injury is not getting the parts pursuant to the contract that they enter. And I think that's an important distinction, Judge Williams. What is it that... I mean, that is not the way, in fact, the district court viewed the matter. Otherwise, the court would not have gone on to the second part of the opinion. I don't want to avoid the second part of the analysis that you're alluding to, Judge Williams. I'm just saying that with respect to the alleged injury in the complaint, and you'll see that at the complaint at pages 29 through 40. I think we all agree that historical injury is that this contract was essentially... Your argument is they made no complaint about the future. Is that what you're saying? That's right. But even if they had... I don't think the district court saw it that way. Well, I think the district court was covering a line of authority, Judge Williams, that says that you can still show injury in certain instances that goes apart from the injury that was within the four corners of the contract. And that's the thesis that the plaintiff has offered, that they can show, in effect, a loss of opportunity with respect to other contracts. Okay? Other airplane parts. Other contracts that could potentially include airplane parts. Go ahead. We submit that there's no possibility that a decision vacating the DOD's action here would be likely to provide redress with respect to the prospects for success in getting future contracts either. First of all, there is no showing... You have to assume, I think, complete success on the merits. You have to assume the merits are completely against the government. And that, the contention is, would remove those orders which prevented the... under which the government ceased to proceed on the path of disposing of those parts. I agree, Judge Williams, but that wouldn't dissuade the government from its desire to avoid selling those parts. What it would say is that... To the extent that that desire is integrated with the decisions challenged, it would. They could make a new decision, Judge Williams, based on a new rationale. Well, they could, but what's the likelihood of that? In other words, the government... You have not pointed us to any policy by which the government would not sell parts that are not, I don't know, coded B and Q, for example, right? The policy that you provided is the one that says these are B and Q parts and that's why we can't dispose of them. That was the only reason given, right? That's right. Okay, so imagine, and we'll talk about this some more, but imagine the court decided these are wrongly coded as B and Q. They're actually, I don't know, A and AA. And there's no... Now, is there any policy to which you can point, any statement by the government, anything, suggesting that it's averse to releasing those kind of parts? Well, what I can show is this, and I think the record indicates this quite clearly. That the government has a number of options with respect to these airplane parts other than selling them, okay? It can recycle them for use in other planes. It can, it can, but that's not the question. The question is, I think he aptly argued, in the past the government has sold parts that are not subject to these codes, and it's never indicated that it doesn't want to keep doing this. Yes, it has other options. That's like saying it could have sold it to somebody else. But if that were the rule, all of our case law about opportunity to contract would be gone. Well, the case law in this court, Your Honor, including cases like the Ressler Foundation case, make it very clear that what a plaintiff has to show in order to show standing in the context that we're talking about is not just better odds that they'll get a contract in the future. They have to show a substantial probability, and that substantial probability has to be demonstrated on the facts as they exist at the time the government's action would be valid. Do you have any, other than the declarations which say, we could do this or we could sell it to that, is there any policy, any policy statement to which you can point us with a proposition that we just decided we're never going to sell these things to anyone or anything like that? No, but with respect to Judge Garland, I don't believe the government has to show that in order to negate the standing that plaintiffs claims to have in this case. So in the case that I wrote about the government contract that we overturned, information handling, that was a case where we said that they lost the opportunity to contract, and the only evidence that they had was that they hadn't in the past been successful. Here, these people have been successful. Why isn't that good enough? Well, they have not been successful, Judge Garland. There's no history of the sale of similar parts to those in these aircraft, either before or since the 2008 contract. Are you contesting the proposition that it is the decisions challenged here that prevented the sale from going forward? Not at all. In other words, it is the challenged decisions that stopped the sale. That's true, Judge Williams. That is not the same thing as saying if the decision that stopped the sale is vacated, that the government will still go forward and sell them now. It doesn't assure it. But in the absence of something else, it doesn't seem like a substantial probability, unless the government is hiding the ball in some interesting way. No, I don't think so, Judge Williams. It remains the government's decision whether to sell parts or not. There are parts of your brief, actually, that are worded such that no challenge could be brought to a government decision for abuse of discretion. Because where discretion exists, it can always end up coming out the same way. Well, I don't want to go into the merits because I don't want to suggest the outcome, although I'm confident of what it would be. But let's get back to the issue of standing. What would the plaintiffs have done to maintain standing in this case? All they would have done was to maintain this contract rather than take their deposit back and to sue GL. That's the backward-looking issue of the original injury, not the ongoing injury. Well, if you want to look at the case law of this circuit with respect to standing in terms of this future harm or future opportunity to compete, I think you'll see that the cases line up with a proposition that where the harm stems from a third party, you pretty much have to show that you have an enforceable right to make that third party act or that there is an overwhelming probability that the third party would act. Here the third party is GL. GL is the third party. Are there a pass-through? Indeed, but without that pass-through, Judge Garland. Well, now you're making a completely different argument. Now your argument is not that the Defense Department might not make it available, but that GL might sell it to somebody else? No, but without an intermediary, the plaintiff has no opportunity to get these future sales and the government might not. I understand, but have you put in anything to suggest that if the government were to release that, that GL wouldn't make it available? Or a similar proof? No, although I would point out that the situation, even for GL, is a little different than it was before all this came up. After all, the plaintiff threatened GL with breach of contract litigation and then went into federal court and claimed that they didn't sue GL because their suit was groundless. GL might very well choose not to do business with you. You haven't put any evidence from GL that they wouldn't do that, have you? No, there is not. But the point is, it's not a certainty. And it's also not a certainty that GL has all that much to gain from future business. There's nothing in the record. What's the markup on this? Well, there's no indication, Judge Williams, as to how GL is compensated or what its markup was going to be. We know that the sale price was set. That's the way these contracts work, and it works in a very unusual way. That is, a large group of parts is put up for bid. The bidders put in their bid, and they're locked in. Then the bidders say what parts they want. That list is submitted to DOD. DOD says, okay, we're only going to sell these parts. Take it or leave it. So DOD did not know that these parts were listed for bidding at the time? No, of course they knew that, but they also knew that they had the right, essentially, to take them out of the bidding after the bids had been submitted. Was there anything that caused them to take it out other than the new policy? It's not a new policy, Judge Garland. It's part and parcel of the policy in which the contracts and the bids were initially submitted. Was there anything that caused them to take it out other than the fact that they were coded as B and Q? No. No, there wasn't. No, there was not. I was wondering why you did not make the unreviewability of national security determinations argument. Why did you not make that? It didn't seem to me, well, I must say I'm not the author of this brief, but I assume that the reason why it wasn't made is because it's not really within the four corners of the standing analysis the district court relied on. Well, it's a threshold. That would get you home free if you ever got to the merits, okay? Well, perhaps you haven't read the cases exactly the way I read them. They all discuss this as a matter of jurisdiction. It's a separate jurisdictional issue, Judge Garland. That's right. So given that much of the kitchen sink was thrown in with respect to defending the position, you'd think that this would, unless you think it's not a good argument, and in response to the argument the petitioners say, in this case the government has permitted the same parts to be flying around the country. I think that's a very different proposition. As you were pointing out, Judge Garland, the question of whether they're safe to fly around the country is really with respect to the safety of the operation of the aircraft. No one's contesting that. But whether these parts should be in private hands is a whole different proposition. But to get them out of private hands involves a seizure of the airplanes, not once they're in private hands whether they're able to fly them. It's also, as the questions from the bench suggested, a whole different proposition for the government to say, we can't do much about it if private citizens in Idaho are able to get planes from Saudi Arabia. But that doesn't mean we have to sell planes to people in Idaho or people in Georgia. What about the point he made about you needed an import license for these planes? I'm sorry, I didn't hear that. The point he made in oral argument that you needed an import license for these planes. With respect, I don't think that that has any bearing on whether the government would permit these planes within its reservoir of equipment to be sold to the public, particularly where it has a number of different options as to what to do with them. Donate them to museums. Does it indicate that they're not hazardous, that the parts are not hazardous? I don't think there's a question here, Judge Garland, as to the hazardous nature of the parts. That wasn't the real basis for the policy. What was the real basis? The real basis for the policy was that they were in aircraft that were subject to military sensitivity and that the national security interests weighed in favor of retaining those equipments rather than putting it in private hands, particularly given the minimal value that the government gets when it sells these parts. This was a contract for $8,250 for the whole shooting match. That was including all these parts. The government can easily decide to forego that modest pecuniary gain if it means doing some compromise in the national interest. Why did it allow the auction to go forward in the first place? Because it retained the power, Judge Garland, in the end to pull any parts that had been sensitive out of the contract. I don't know of anything that prevents the government from proceeding on that basis, and it was absolutely clear, and it's clear on the record. I think you can find it at page 5 of the government's brief, that the terms of this made clear that in the end the government would say what parts could be purchased under this contract, and then the winning bidder would have two options, take it or leave it. If you leave it, you take your deposit back, and that is what they did. If they want to take it, they take it as is. So you're saying the government could decide on any basis at all not to produce the information? The general terms of the contract, Your Honor, make that very clear. So imagine that they said, well, sorry, your owner is black. We're not selling to blacks. No standing? No. There would be standing, right? There would be standing. Okay, so in this case, their reason is, we have to assume for the purpose of this, their reason is arbitrary and capricious. Why not standing for that claim? Let me answer that with respect to the terms of the contract, because I think that's important. The terms of the contract, which I think are repeated here, allow the Department of Defense to withdraw from the contract if it changes a demilitarized code or determines that an item for sale by GL may not be sold. So it wasn't simply restricted in the terms of these contracts as to whether the demilitarized code was changed. I think this contract gave the government plenary authority to pull parts from that list. And GL entered that contract. That sounds like Merritt's argument to me. Judge Williams? I mean, it sounds like Merritt's argument or a spin on the argument that Jeff Garland was trying with at first. No, I don't think it's Merritt's argument, Judge Williams, because it relates to the question of when you can show standing when your injury is dependent on the acts of a third party. And here GL or anybody else standing in that status is the third party that causes the injury because they're the party that contracts to the plaintiff, and it's the failure to honor the contract that presents the injury. In terms of the plaintiff's interest in getting these parts, suppose GL completely disappeared. What effect does it have on anything? I don't get it. Without GL, Teton doesn't have a right under contract. It doesn't have a right under contract. It doesn't have a right under contract, of course. That's perfectly clear, but it's not suing because of a right under contract. It's suing because it believes that the government has acted arbitrarily with respect to these parts. But its injury, Judge Williams, is an injury to its interest as a contractual party. That's the reason why GL and the third-party analysis is important. Without the contract, plaintiff doesn't have standing for anything. If the government had simply issued this policy with respect to demilitarized codes, I don't believe that I would be able to challenge it in court on the basis of it being arbitrary and capricious. I wouldn't have standing. If I had a contract to purchase those parts, different proposition. If there's a valid contract, and if I've sued to enforce that contract. You don't think opportunity to contract gives you standing? Not on a contract-by-contract basis, Your Honor. That's what this court said in the CC distributors case. That's the closest case the plaintiff has to this. But in that case, what happened was the challenge to action was an action by the Department of Defense to take all of a certain kind of sales operation in-house, so that nobody could compete for contracts to sell these engineering goods. And what the court said there was, well, if you do that, you've lost your opportunity to compete for all of these contracts. Right. And isn't that what you're arguing here? No. That the military could decide not to release any of the parts at all, and that, therefore, everybody's lost their opportunity for contracting. No. Your Honor, it's different. And the difference is that what the court said in that particular case was that there probably wouldn't be standing if somebody was arguing that they lost a particular contract. But you don't have a contract here. And without a contract, this general loss of ability to compete won't get you very far. Why is there no contract here? There's no contract here because the contract was canceled. Why was the contract canceled? The contract was canceled because Teton would not specify whether it could take... Wasn't the contract canceled under Teton's theory because of an unlawful action by the government? Well... Isn't that their claim? Their claim is we had a contract, it was going fine, and then the government arbitrarily changed... They still had to take actions that were consistent with the enforcement of the contract. And what they did, Judge Griffith, when they reclaimed their deposit, was the same thing that people are instructed to do. They were operating under their theory. They were operating under an arrangement, a contract that had been changed unlawfully because of the government's arbitrary and capricious action. Their obligation, Judge Griffith, was to retain their deposit, enforce the contract, and sue GL to enforce it. If they had done all that, if this court then did declare what the government has done, arbitrary and capricious, it's clear that they would then have real relief because then they could say, GL has to honor this contract and they have to sell them these parts. But that isn't available anymore, and it isn't available because of the way that Teton acted. So if... let's imagine that, in fact, the government did act unlawfully. Okay, hypothetical situation for you. If the government did act unlawfully, that does not change the analysis in terms of what obligations Teton was under? No, it doesn't. It doesn't. Not unless it goes forward and perfects its ride under that contract. And they acted in a way it was inconsistent with that when they took back their deposit. Imagine you're completely wrong on the law, okay? Imagine that we read our own cases, which we ourselves wrote, to not say there has to be an existing contract, but merely being the removal of the opportunity to contract. Now what is your argument? If the court goes too far as to say that, that all you need is a removal of the opportunity to contract, then I don't know what's... I have a likelihood, and it's still, there is still a requirement that there be a substantial likelihood that you could get it afterwards. So what's your argument about substantial likelihood? Based on your hypothetical, Judge Garland, I think anyone would have standing to challenge that action whether they ever had been a government contractor or not. So you have no backup argument? That's your only argument, really? Not if the court takes such an expansive view of standing. You have no argument that the government is unlikely to offer contracts to anybody. I thought that was your argument. Well, yes, but I thought that your hypothetical... My hypothetical is you don't need a contract to begin with. That's what I'm arguing against. You don't need the contract to begin with. All you need is evidence that it's substantially likely that if they removed an unlawful barrier, you would get a contract. I think they've got to show more than a likelihood. Otherwise, the admissions in this court, when they said that you've got to show more than your odds will improve if this situation occurs, don't mean anything. Odds improve isn't the right language. Substantial likelihood is the right language. I don't know the difference between odds improvement and likelihood because it seems... Well, moving from 5% to 10% is odds improving. That's not substantial likelihood yet, right? Well, I don't think it's a mathematical formula, Judge Griffith, because I thought that the courts... No, but odds improving is different than substantial likelihood. Well, you get to a point, I suppose, when the odds improve from 49% likelihood to 51% likelihood that you've met your substantial likelihood test. But my reading of this court's jurisprudence is that what you have to show is that at the time of the decision, the plaintiff has a substantial likelihood that they have an enforceable right. Not that if then things break right, if this party behaves the way they probably will and this party behaves the way they probably will, then the plaintiff's got something. They've got to show more than that. That's why in cases like that West Virginia case where they said if the government's decision with respect to making block grant formulas available, if it puts more money in there, then the plaintiff has a right to compete for that greater money. It's true. It's got to go to West Virginia for it. But West Virginia has no disincentive to make that money available. Therefore, we can count on that third party acting the predictable way. But there's no third party here, GL or the equivalent, of acting in a predictable way because there's no indication that GL or its alter egos would do that. Okay, do we have any other questions from the bench? Okay. He has time left, right? Go right ahead. Your Honors, thank you. My priority is to answer any questions you might have, certainly with my time, but I do have a few points I want to make. First of all, with regard to Your Honors' question about where the plane that my client owns right now came from, it's my understanding, and this may not be in the record, but it's my understanding that the plane was purchased from a DRMO, also part DLA, from the government, not overseas, but that's not in the record. That was not an issue below, but that is my understanding. Well, it does seem like it was an issue. And the government was arguing that to the extent you had a plane, it didn't come from a sale from them. So it seems like a big hole in the record to not have it, to not know. I've assumed all along that it did not come from the government. Right, Your Honor. And as I said, I haven't had a chance to research it, so I don't want to represent the court incorrectly, but it's my understanding, speaking to my client, that the plane did come from the government originally. That's where they purchased it from. But, Your Honor, I just want to make clear for the record that Teton does, as this Court asked, we do imagine the case law as you proposed it, which is that we only need an opportunity to contract. But having said that, I do want to clarify the record with regard to this issue of the deposit that the government raised. We did not want the contract to end or the sale to be over. Government liquidation insisted on sending the deposit back. We reserved all rights with regard to our rights under the contract because it was $50,000 and we're a small company. We couldn't leave that money hanging out there for a long period of time, but we did reserve all rights. But recognizing that, we think the more important issue is that we only need to show an opportunity to contract, not an actual contract. Well, you need to show an opportunity, and you have to show that the contract or is likely to contract with you if you have that opportunity. Yes, Your Honor. And we, Teton, our government liquidation's letter to us, which the court, District Court below cited, makes it very, very clear that the only reason, the only reason that government liquidation broke off this sale was because of the government's classification decision. That was it. They offered no other reason. So it goes back to our point about what? When you said that the evidence that you would be likely to get these parts is that the government has allowed these planes to fly otherwise, opposing counsel says those are determinations of agencies like the FAA as to whether flying is safe. Those aren't determinations anymore at that stage of whether there's a national security issue. Is there some certification that was required before, for example, your plane could fly other than FAA safety-related certifications? I'm not aware of there being any other certification other than being certified by the FAA to fly this aircraft. I'm not aware of it. So that's a safety question but not a national security question. In other words, we don't have, when I asked about the national security, whether the court would be in a position to make judgments about national security, you said, well, they've been allowing these planes otherwise, but if the agency never had an opportunity to make a national security determination about the same planes, that argument wouldn't quite fly as it were. Understood, Your Honor. And I'm not as knowledgeable as perhaps I could be about the FAA, but one would assume, granted this is an assumption, that for the FAA to certify a type of aircraft for flight, that it's been okayed or confirmed in some way with the Department of Defense. And especially given how long these aircraft have been out there, I would think, again, making an assumption, Your Honor, that if these were hazardous to national security, the FAA would not be certifying them for flight. And, Your Honor, just to wrap up real quickly, I think that what's going on here with the government's arguments is the same position that they took in the Duke Power case, which we cited in our reply brief. And in that case, the Supreme Court ruled that plaintiffs like Teton are not required to, quote, negate the kind of speculative and hypothetical possibilities suggested by the government in order to demonstrate the likely effectiveness of judicial review. We think at this stage the government is raising any possible argument, any possibility, and that does not, in our view, demonstrate that it's likely that we would get the parts. It does not negate that in any way. Any questions from the bench? We'll take a matter under submission. Thank you, Your Honor.